IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **FRANCIS WARD,** *et al.***,** ) |  |
| ) |  |
| Plaintiffs / Counter-Defendants, ) |  |
| ) |  |
| v.  ) | CIVIL ACTION 09-0065-WS-N |
| ) |  |
| **REAL SHIPS, INC.,** ) |  |
| ) |  |
| Defendant / Counter-Plaintiff.  ) |  |

**ORDER**

This matter comes before the Court on plaintiffs' Memorandum in Support of Default Judgment (doc. 44).

**I.     Relevant Background.**

This action arises from nonperformance of a contract to build a yacht. According to the well-pleaded allegations of the Amended Complaint (doc. 25),[1] plaintiffs, Francis and Susan Ward, entered into a contract with defendant, Real Ships, Inc., in March 2006, pursuant to which Real Ships agreed to construct a 77-foot yacht for the Wards in accordance with certain plans and specifications for the fixed price of $3,195,000. (Doc. 25, ¶¶ 5-6.) Real Ships promised to deliver the completed yacht to the Wards on or before September 25, 2007; however, defendant did not satisfy its contractual obligations in this regard. (*Id.*, ¶¶ 6-7.) By September 2008, the yacht remained far from completion. (*Id.*, ¶ 8.) In December 2008, the Wards formally placed

---

[1]     All well-pleaded factual allegations in the Amended Complaint are deemed admitted by virtue of defendant's default. *See, e.g., Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (defaulting defendant "admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established") (citation omitted); *Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact."); *Twist and Shout Music v. Longneck Xpress, N.P.*, 441 F. Supp.2d 782, 783 (E.D. Tex. 2006) ("The effect of the entry of default is that it cuts off the defendants' right to appear in the case with respect to liability issues.").

Real Ships on notice of its default and breach. (*Id.*, ¶ 9.) When Real Ships failed to cure the default, the Wards terminated the contract on December 30, 2008. (*Id.*, ¶¶ 10-11.)

As a result of these events, the Wards paid substantial sums to Real Ships for construction of the yacht pursuant to the contract, only to find themselves with no yacht and nothing to show for those payments. Real Ships neither refunded their money nor acceded to plaintiffs' demands to turn over the incomplete yacht hull, as well as materials and equipment relating to same. So the Wards filed suit against Real Ships in this District Court. Plaintiffs invoked diversity jurisdiction pursuant to 28 U.S.C. § 1332, and brought causes of action for breach of contract, constructive trust and unjust enrichment. In March 2009, Real Ships appeared in this action by and through counsel, and filed an Answer and Counterclaims. (*See* doc. 6.) This action proceeded in routine fashion until July 2009, when Real Ships' counsel was granted leave to withdraw on the grounds that counsel and client had mutually agreed to terminate their relationship. (*See* docs. 37, 38.) What followed was a campaign of complete silence, non-participation, and defiance of court orders by Real Ships. By its conduct, Real Ships demonstrated that it had no intention of abiding by court orders, defending against the Wards' claims, or prosecuting its counterclaims, despite receiving notice of the implications of such a course of conduct and a reasonable opportunity to reconsider. Real Ships' recalcitrance prompted the Court to enter a default against it (and to dismiss its counterclaims) via Order (doc. 41) dated August 31, 2009.[2] The August 31 Order instructed the Wards to submit an evidentiary showing, legal memorandum, and proposed default judgment in support of their claims for damages against Real Ships. The Wards having now done so, the questions of the amount and form of the default judgment to be entered against Real Ships are ripe for disposition.

**II.     Analysis.**

As explained in the August 31 Order, the entry of a default against Real Ships in this action does not obviate the Wards' obligation to come forward with sufficient evidence to prove

---

[2] A copy of the August 31 Order was mailed to Real Ships at its address of record. As such, there is no question that Real Ships is aware of the entry of default; nonetheless, it has elected neither to undertake to defend itself nor to attempt to set aside the default.

both the amount and character of their damages.³  Although such evidence may be taken via evidentiary hearing, no hearing is required if the Wards present sufficiently detailed documentation to enable the Court to fix damages.⁴  The Court finds that the Wards have satisfied this requirement by submitting extensive written materials (in the form of affidavits and exhibits) supporting their damages request; therefore, no hearing is necessary, and none has been requested.  As such, it is now appropriate to examine the specifics of the Wards' proposed form of default judgment.

### A. *Damages Award.*

Plaintiffs seek to recover the following categories of damages against Real Ships: (1)

---

³  "While well-pleaded facts in the complaint are deemed admitted, plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages." *Virgin Records America, Inc. v. Lacey*, 510 F. Supp.2d 588, 593 n.5 (S.D. Ala. 2007).  Even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see also Credit Lyonnais Securities (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (even where default judgment is warranted based on failure to defend, allegations in complaint with respect to damages are not deemed true, and district court must conduct inquiry in order to ascertain damages with reasonable certainty); *Patray v. Northwest Pub., Inc.*, 931 F. Supp. 865, 869-70 (S.D. Ga. 1996) (explaining that it is proper exercise of judicial power for court upon default to take evidence, fix amount which prevailing party should recover, and then give judgment).  A default judgment "does not give the plaintiff a blank check to recover from the defaulting defendant any losses it had ever suffered from whatever source." *Jackson v. Correctional Corporation of America*, 564 F. Supp.2d 22, 27 (D.D.C. 2008) (citations omitted).

⁴  *See, e.g., S.E.C. v. Smyth*, 420 F.3d 1225, 1231-32 & n.13 (11th Cir. 2005) (ordinarily the law "requires the district court to hold an evidentiary hearing" to fix damages, but no hearing is needed "when the district court already has a wealth of evidence ..., such that any additional evidence would be truly unnecessary to a fully informed determination of damages"); *also Virgin Records*, 510 F. Supp.2d at 593-94 ("Where the amount of damages sought is a sum certain, or where an adequate record has been made via affidavits and documentary evidence to show ... damages, no evidentiary hearing is required."); *Natures Way Marine, LLC v. North American Materials, Inc.*, 2008 WL 801702, *3 (S.D. Ala. Mar. 24, 2008) ("Although the trial court must make determinations as to the amount and character of damages, it is not necessary to conduct an evidentiary hearing to fix damages if the amounts sought by plaintiff are adequately supported by supporting affidavits and other documentation."); *Taylor v. City of Ballwin, Mo.*, 859 F.2d 1330, 1333 (8th Cir. 1988) (evidentiary hearing not necessary where facts in the record enable the court to fix the amount which the plaintiff is lawfully entitled to recover).

payments made by the Wards to Real Ships pursuant to the contract; (2) out-of-pocket expenses incurred by the Wards in connection with the Real Ships contract; and (3) accrued pre-judgment interest on those amounts. Each of those types of damages will be considered in turn. In so doing, the Court recognizes the Alabama principle that "[a]s a general rule, damages in a breach-of-contract action are that sum which would place the injured party in the same condition he would have occupied if the contract had not been breached." *Goolesby v. Koch Farms, LLC*, 955 So.2d 422, 427 (Ala. 2006) (citations and internal quotation marks omitted).[5] That said, Alabama courts have also emphasized that "the injured party is not to be put in a better position by a recovery of damages for the breach than he would have been in if there had been performance." *Garrett v. Sun Plaza Development Co.*, 580 So.2d 1317, 1320 (Ala. 1991).

### 1.  Contract Payments.

The first component of compensatory damages claimed by the Wards is reimbursement of periodic payments they made to Real Ships in performing the contract. The Wards present evidence that they paid Real Ships the total sum of $2,024,634.95 towards the agreed-upon contract price for the yacht. (Ward Aff., ¶¶ 5-8 & Exh. A.)[6] Plaintiffs' backup documentation confirms that these funds were paid to Real Ships in a series of 20 installments from January 2006 through October 2008, and that all such funds appear to have been payments toward the yacht's construction (*i.e.*, labor, materials, equipment, rent/leases, professional services, etc.). The fact, amount and purpose of those installment payments have been reasonably established by plaintiffs' evidentiary showing.

The record reflects that the Wards made these payments to Real Ships pursuant to the parties' contract and in consideration for a yacht that was neither completed nor delivered to

---

[5] *See also Systrends, Inc. v. Group 8760, LLC*, 959 So.2d 1052, 1075 (Ala. 2006) ("Damages for breach of contract should return the injured party to the position he would have been in had the contract been fully performed.") (citations and internal quotation marks omitted); *Garrett v. Sun Plaza Development Co.*, 580 So.2d 1317, 1320 (Ala. 1991) (damages in breach of contract context "are generally those that flow naturally from the breach").

[6] Such payments were contemplated by the clear terms of the agreement, which specified that the Wards would pay a $30,000 deposit and a $70,000 first payment, after which they would be billed on a bi-monthly basis for Real Ships' costs and invoices in performing the job. (Doc. 25, Exh. A, at § 4.)

them. Simply put, the Wards paid Real Ships the sum of $2,024,634.95, but never received anything of value in return. Such sums are reasonably recoverable in this breach of contract action because the reimbursement of those payments to the Wards will restore the status quo and return them to the position they would have held had Real Ships not breached the contract.

    2. *Expenses.*

 The Wards also seek an award of various expenses they incurred in connection with the yacht contract, including "amounts paid to a designer" ($144,196.97), "loss on a dinghy which was purchased for [the yacht] and sold because of Real Ships, Inc.'s default" ($10,441.89), and travel expenses for numerous visits to Alabama and Florida between 2006 and 2008 ($41,152.82). These expenses fall under the general heading of consequential damages, which may be recoverable under Alabama law in the breach of contract context in certain circumstances. *See HealthSouth Rehabilitation Corp. v. Falcon Management Co.*, 799 So.2d 177, 183 (Ala. 2001) (damages for breach of contract must be "natural and proximate consequences of the breach and such as may reasonably be supposed to have been within the contemplation of the parties at the time the contract was made") (citations omitted).[7] In support of their request to recover these types of damages, plaintiffs lean heavily on the proposition that, in determining damages for a breach of contract, "any necessary expenses that the parties reasonably incur in complying with the contract may be included." *Marshall Durbin Farms, Inc. v. Landers*, 470 So.2d 1098, 1102 (Ala. 1985). Upon review, the Court finds that plaintiffs have failed to make the requisite evidentiary showing to warrant recovery of any of these expenses as consequential damages.[8]

---

  [7] Under Alabama's version of the UCC, consequential damages recoverable for a seller's breach of a contract for the sale of goods include "[a]ny loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise," as well as "[i]njury to person or property proximately resulting from any breach of warranty." Ala. Code § 7-2-715(2). Although plaintiffs cite this section of the Alabama Code in their brief, they do not explain how their ostensible "consequential damages" would fit within this limited statutory rubric.

  [8] Plaintiffs cannot meet their burden by relying on an unvarnished statement in an affidavit that all of these expenses "were a natural and proximate consequence of entering into

With regard to the designer, the record shows that the Wards paid a company called GTH Design Techniques Inc. the sum of $144,196.97 in 14 installments between October 2006 and December 2008. (Ward Aff., ¶ 15 & Exh. C.) However, plaintiffs have failed to submit evidence explaining why those design expenses were incurred, what design work was performed, how it related to the yacht, how those expenses were within the parties' contemplation when the yacht contract was made, and whether plaintiffs received anything from GTH Design that retains value after Real Ships' breach. Certainly, nothing in the purchase agreement for the yacht suggests that the Wards were expected to hire and pay a third-party designer for their vessel.[9] In short, plaintiffs have failed to submit adequate proof that the design payments represent recoverable damages in this breach of contract action against Real Ships. There being no evidence that the Wards reasonably incurred necessary GTH Design expenses in complying with the contract, that those expenses were within the reasonable contemplation of the parties at the

---

the contract with Real Ships, Inc. and were contemplated by the parties at the time of entering the contract." (Ward Aff., ¶ 13.) That statement is devoid of factual content, but is instead a legal conclusion masquerading as a statement of fact. Merely parroting back a legal standard in an affidavit is improper and unhelpful, in the absence of any facts to support it. *See generally Robinson v. Sanctuary Record Groups, Ltd.*, 542 F. Supp.2d 284, 288 (S.D.N.Y. 2008) (on default judgment, plaintiff must prove damages with "reasonable certainty" using "competent evidence").

[9]     To the contrary, the contract stated that the Wards' yacht "shall be constructed in accordance with the general plans of Real Ships, Inc. [a]nd special specifications attached to this contract as Exhibits 1-5." (Doc. 25, Exh. A, § 1(1).) The contract further provided that "[d]esign plans and specifications referred to as Exhibits 1-5 ***shall be prepared by the Builder*** ...." (*Id.*, § 2 (emphasis added).) If (as the contract states) it was Real Ships' contractual responsibility to prepare design plans and specifications, then why did the Wards retain a designer and pay that company $144,000? The Wards provide neither evidence nor argument on this critical point, beyond Francis Ward's conclusory statement that the design expenses were "incurred as a consequence of entering the subject transaction with Real Ships, Inc." (Ward Aff., ¶ 15.) Furthermore, even assuming that GTH Design prepared plans for the Wards' yacht, presumably those plans have not been lost or negated by Real Ships' breach of the contract. In other words, if GTH Design prepared plans for the Wards' yacht, it does not necessarily follow that those plans have been invalidated by Real Ships' breach. If the Wards have access to those GTH Design plans, then they still have the benefit of the plans that company designed for a yacht on the Wards' behalf, and could presumably have another builder construct a yacht for them in accordance with those plans. Simply put, the Wards have not shown why the $144,000 they spent on design services became a loss when Real Ships breached the contract.

time of entering into the yacht contract, or that the Wards have somehow been deprived of the benefit of the GTH Design services by virtue of Real Ships' breach of contract, plaintiffs have failed to meet their burden.  Because of this defect in proof, the design amounts will not be included in the Wards' damages award.

Next, the Wards attempt to recover a sum of money they lost on a dinghy they had purchased for use on their yacht.  The fragmentary evidence presented on this point is that the Wards purchased a 2008 Boston Whaler 17MTK dinghy on July 29, 2008 for the sum of $30,266.89, then resold it on April 9, 2009 for just $20,025.00.  (Ward Aff., Exhs. C, C-2.)  The record is devoid of facts tending to show (i) why the Wards purchased the dinghy 10 months after the agreed-upon delivery date for the yacht, when they knew that Real Ships was far from completing their yacht; (ii) whether it was reasonably contemplated by the parties that the Wards would buy a dinghy in connection with the yacht transaction; (iii) why the Wards resold the dinghy just eight months after buying it; and (iv) how the dinghy's market value plummeted by some 34% during that eight-month period.  Simply put, there is no specific record basis to support any finding that the Wards' purchase of the dinghy was a necessary expense reasonably incurred in compliance with the contract, that said purchase was within the parties' contemplation when the yacht purchase agreement was executed, or that plaintiffs' subsequent re-sale of the dinghy at a steep loss yielded compensable consequential damages arising from Real Ships' breach of the yacht agreement.  Accordingly, this item of damages will be disallowed based on plaintiffs' failure to meet their burden of proof.

A final category of expenses claimed by the Wards consists of more than $41,000 in travel expenses for one or both plaintiffs' 10 visits to Alabama and/or Florida in connection with the yacht contract.  (Ward Aff., at Exh. C-3.)  The evidentiary shortcomings as to this category of damages are palpable.  Leaving aside the lavish nature of many claimed travel expenses,[10] the record still raises more questions than it answers on this point.  What do the Wards' four trips to boatshows in Miami, Florida between October 2006 and November 2008 have to do with the

---

[10]   The dollar amounts of each round-trip airline ticket (sometimes as high as $2,000 per ticket) from plaintiffs' residence in Idaho to destinations in Florida, as well as hotel bills reaching upwards of $800 per night and meal bills from upscale restaurants, strongly suggest that plaintiffs did not undertake to limit their travel expenses to reasonably necessary levels.

Real Ships contract? Why did one or both Wards visit the "Boatyard" (presumably the Alabama shipyard where the yacht was being constructed) on nine occasions during that time frame? Under what theory could contract formation expenses (*i.e.*, the Wards' trip to a Palm Beach Boatshow in March 2006 to negotiate the yacht contract with Real Ships) reasonably be viewed as a form of recoverable damages for Real Ships' subsequent breach of that contract? Plaintiffs present no evidence showing how any of these travel expenses were reasonably incurred in complying with the contract, leaving the Court to guess as to why the Wards kept visiting the "Boatyard" and attending boat shows in south Florida.[11] Nor do plaintiffs submit record evidence demonstrating that travel expenses of this magnitude were within the reasonable contemplation of Real Ships when the yacht contract was executed in March 2006. More fundamentally, it is a bedrock principle of Alabama contract law that "the injured party is not to be put in a better position by a recovery of damages for the breach than he would have been in if there had been performance." *Garrett*, 580 So.2d at 1320. Plaintiffs' travel expenses would not have been reimbursed to them had Real Ships complied with its contractual obligation to build them a yacht; moreover, there is no evidentiary basis for concluding that those travel expenses were incurred as a result of Real Ships' nonperformance. For all of these reasons, the Court will not award travel expenses to the Wards as part of the default judgment.

       3.     *Prejudgment Interest.*

As a final category of damages, the Wards claim prejudgment interest in the amount of $282,832.07 on sums they have paid to Real Ships. (Ward Aff., ¶ 9 & Exh. B.) The Court agrees that an award of prejudgment interest is appropriate in this case. Indeed, it is well established under Alabama law that prejudgment interest may be available in the breach of contract context where, as here, damages were reasonably certain at the time of breach. *See Goolesby*, 955 So.2d at 429 ("Prejudgment interest may be available in a breach-of-contract case, ... but only if damages were reasonably certain at the time of the breach.") (citations omitted).

---

[11] At most, plaintiffs provide a conclusory statement that these expenses were for "travel in connection with the transaction" and were "incurred as a consequence of entering the subject transaction." (Ward Aff., ¶ 15.)

That said, the Court cannot adopt plaintiffs' calculations. To be sure, plaintiffs have correctly used Alabama's default prejudgment interest rate of 6% in their computations. *See, e.g., Rhoden v. Miller*, 495 So.2d 54, 58 (Ala. 1986) ("Where no written contract controls the interest rate ..., the legal rate of pre-judgment interest is six percent per annum."); *Mitchum Const. & Engineering Co. v. Sellers*, 632 So.2d 973, 974 (Ala.Civ.App. 1993) (similar). However, plaintiffs' mistake was to compute interest from the date each payment to Real Ships was made. Alabama law provides that prejudgment interest on a contract for the performance of any act or duty accrues from the day the act should have been performed. *See* Ala. Code § 8-8-8; *see also Miller and Co. v. McCown*, 531 So.2d 888, 889 (Ala. 1988) ("in contract cases, where an amount is certain or can be made certain as to damages at the time of breach, the amount may be increased by the addition of legal interest ***from that time*** until recovery") (emphasis added and citations omitted). In other words, prejudgment interest accrues from the date of breach, not from the date each periodic payment was initially made. Plaintiffs' calculations disregard that legal principle and significantly inflate the prejudgment interest calculations above the legally recoverable amount.

According to the well-pleaded allegations of the Amended Complaint, the Wards terminated the contract on December 30, 2008 based on Real Ships' default. (Doc. 25, ¶ 11.) The date of cancellation of the contract is an appropriate benchmark triggering plaintiffs' right to prejudgment interest; therefore, the Court will award prejudgment interest at the statutory rate of 6% per annum on the payments of $2,024,634.95, running from December 30, 2008, through the date of entry of this Order. Thus, prejudgment interest will be awarded in the amount of **$98,513.74**.

        **B.**      ***Constructive Trust Issue.***

Aside from the damages issues, plaintiffs devote much of their argument in support of default judgment to their request for a constructive trust on various parts, materials, and equipment relating to the never-completed yacht construction project. Specifically, the Wards ask the Court to impose a constructive trust on the following property that they contend is in the control or possession of Real Ships: (a) the 77-foot uncompleted hull of plaintiffs' yacht; (b) Cummins engines; (c) bow thruster equipment; (d) gangway; (e) ocean LED underwater camera; (f) travel lift; (g) Wesmar hydraulics package; (h) one-half interest in a portable shelter; (i) one-

half interest in a pipe-bending machine; (j) one-half interest in a BASF foam machine; and (k) the proceeds of the sale of a davit.

The doctrine of constructive trust is ill-fitting here. As an initial matter, it bears emphasis that Alabama courts have recognized constructive trusts only in narrow circumstances, typically involving fraud or abuse of a confidential relationship. *See Radenhausen v. Doss*, 819 So.2d 616, 620 (Ala. 2001) (constructive trust arises when title to property "has been obtained through actual fraud, misrepresentation, concealments, or through undue influence, duress, taking advantage of one's weaknesses or necessities, or through any other similar means or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest") (citations and internal quotation marks omitted); *see also Pihakis v. Pihakis*, 496 So.2d 765, 768 (Ala. 1986) ("A constructive trust arises when one person, occupying a fiduciary position, or having placed himself in such position in relation to another that good faith requires him to act for the other and not for himself, acquires the title for the property in himself .... These cases involve fraud, or a breach of trust in acquiring the title to the property in himself.") (citations omitted). Alabama courts have rejected constructive trust claims where "the plaintiffs failed to allege any of the traditional bases for establishment of a constructive trust, such as abuse of a confidential relationship, mistake, fraud, or a parol promise to hold in trust." *Teele v. Graves*, 425 So.2d 1117, 1119 (Ala. 1983). In this case, the Wards have made no allegations of fraud, breach of trust, undue influence and so on.[12] Rather, plaintiffs simply contend that Real Ships breached a contract and used the Wards' payments to purchase certain items that it then refused to disgorge to the Wards upon demand. Plaintiffs do not identify a single Alabama authority wherein a constructive trust has been imposed in similar

---

[12] At best, Francis Ward makes a conclusory statement in his affidavit that "Real Ships, Inc. has taken advantage of me and has defrauded me out of several million dollars by a series of wrongful and deceitful acts." (Ward Aff., ¶ 40.) But Ward offers no specifics to support these bald accusations. Even if he had, the Amended Complaint is devoid of allegations of fraud, manipulation or deceit. It is improper for a plaintiff to expand the tenor and scope of its factual allegations in this manner in default judgment proceedings. *See Capitol Records v. Carmichael*, 508 F. Supp.2d 1079, 1084 (S.D. Ala. 2007) (notwithstanding defendant's default, "judgment may be granted only for such relief as may lawfully be granted upon the well-pleaded facts alleged in the complaint") (citation omitted).

circumstances (*i.e.*, an ordinary breach of contract scenario where the buyer made periodic payments prior to the seller's breach, and the seller used those funds to purchase equipment and materials that the buyer wishes to recover).

Furthermore, even assuming the underlying circumstances might reasonably support imposition of a constructive trust in this case, Alabama courts have long held that "a constructive trust may not be imposed unless relief at law would be inadequate." *Hensley v. Poole*, 910 So.2d 96, 107 (Ala. 2005) (citations omitted); *see also Berryman v. Adams*, 883 So.2d 214, 220 (Ala.Civ.App. 2003) ("A constructive trust may be found only where a fraud or an inequity demand a result that may not be had at law.") (citations omitted). It is not enough for a plaintiff to argue that a constructive trust would lead to a more just or effective result. *See Hensley*, 910 So.2d at 107. Plaintiffs submit no evidence that their remedy at law (namely, an award of money damages against Real Ships, with the full panoply of collection /execution mechanisms provided by Alabama law) will be inadequate to protect their interests. At most, plaintiffs offer Francis Ward's statement on information and belief that Real Ships "does not have sufficient funds or assets ... to respond to the judgment." (Ward Aff., ¶ 20.)[13] Plaintiffs do not identify any Alabama authority supporting the proposition that mere suspicion that a defendant might be judgment-proof furnishes an adequate predicate for imposition of a constructive trust.

By all appearances, the Wards' request for constructive trust is driven in substantial measure by plaintiffs' desire to derive a strategic advantage vis a vis other creditors of Real Ships in the event the latter files for bankruptcy protection. The Amended Complaint alludes to that concern. (Doc. 25, at ¶¶ 21-23.) Moreover, plaintiffs balk that a consent judgment was recently entered into between Real Ships and a company called Steiner Shipyards, Inc. in a

---

[13] Plaintiffs indicate that Real Ships' owner, Joe Johnson, has personally filed for bankruptcy protection in the U.S. Bankruptcy Court for the Southern District of Alabama, but they acknowledge that "Real Ships, Inc. has not filed for bankruptcy protection." (Ward Aff., ¶ 20.) The Court notes that the Wards are actively involved as creditors in Johnson's bankruptcy proceedings, which are styled *In re Stanley John Johnson, Debtor*, Case No. 09-13796-WSS-7, and presently pending in the U.S. Bankruptcy Court for the Southern District of Alabama. In that case, the Wards have taken the position that Johnson personally owes them in excess of $2 million, and that the Wards are entitled to discovery concerning Real Ships, Inc. in the *Johnson* bankruptcy action.

different lawsuit brought in state court, as a result of which Steiner was granted liens on property relating to the yacht in this case. (Ward Aff., ¶¶ 27-42; doc. 44, at 6-7.) Plaintiffs' extensive discussion of the *Steiner* lawsuit exposes their request for a constructive trust in this case as an attempt to unravel the state court judgment or otherwise gain an edge over Steiner in their competing claims to the same Real Ships assets, especially if Real Ships goes bankrupt. Of course, Steiner is not a party to these proceedings. This is not a bankruptcy case. This Court is not parceling out Real Ships' assets among various creditors. In the context of these default judgment proceedings, it would be inappropriate for this Court to prioritize one creditor's claims versus another's, to set up a pecking order for reimbursement, or to overrule or undermine a state court judgment involving other parties, particularly where Steiner is not a party herein and has not had an opportunity to be heard.[14] To the extent that the Wards invoke the constructive trust vehicle for these purposes, the Court finds that they are inappropriate and declines to exercise its equitable power and discretion to impose a constructive trust in these circumstances.[15]

### III.   Conclusion.

For all of the foregoing reasons, it is hereby **ordered** that a default judgment will be entered in favor of plaintiffs, Francis Ward and Susan Ward, and against defendant, Real Ships, Inc., in the total amount of **$2,123,148.69**, representing payments made by the Wards to Real Ships in connection with the yacht purchase agreement, and including prejudgment interest

---

[14]   Also, the Court is hard-pressed to understand the legal and factual grounds for the Wards' repeated statements that the materials and equipment at issue "belong to" them or are "rightfully" theirs. (Doc. 44, at 5; Ward Aff., ¶¶ 32-41.) Plaintiffs have presented no evidence that Real Ships promised to hold these items (whatever their source of funding may have been) in trust for plaintiffs, that the parties had agreed that the Wards would own everything Real Ships purchased with their progress payments, or that the parties had agreed that the Wards would have any right of ownership or possession in anything other than the completed yacht upon delivery of same by Real Ships.

[15]   The Court understands that the Wards have intervened in the *Steiner* action in state court, where they have filed a motion pursuant to Rules 59(e) and 60(b)(4) in an attempt to modify or set aside the consent judgment in that case insofar as it relates to items in which the Wards claim an interest. To the extent that the Wards object to the *Steiner* judgment, they are far better served by asking the state court to revisit its ruling than to petition this Court to declare the *Steiner* consent judgment a sham.

computed through today's date.  Plaintiffs' request for imposition of a constructive trust over personal property, equipment, machinery and materials is **denied**.

A separate default judgment will enter.

DONE and ORDERED this 22nd day of October, 2009.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE
